In this suit, the relator, James W. Tanner, is seeking to have declared as null and void, and of no force and effect, the action of the Democratic Executive Committee of the Parish of East Baton Rouge, which, by resolution adopted on October 17, 1942, rejected his nomination as candidate of the Democratic party for member of the School Board of the Parish of East Baton Rouge, Eighth Ward, although he had been elected in the primary election, and certified instead, the name of his unsuccessful opponent, Joseph H. Duncan. All the formalities prescribed by the primary law, Act No. 46 of 1940, in calling the primary election and in conducting the same had been duly observed. Three candidates had offered in the first primary and as none received a majority of the votes cast, a second primary had been ordered between the relator and Joseph H. Duncan, and upon the same having been held, the relator was shown to have received a majority of the votes and ordinarily would have been entitled to the nomination without question.
On October 17, 1942, the day on which the committee met to tabulate and compile the results of the second primary, in accordance with the provisions of the primary law, the resolution herein attacked was offered and adopted. The resolution states that whereas the Democratic State Central Committee had, by resolution adopted on July 2, 1940, fixed the qualifications of every candidate in primary elections to be held in this State, among which was one stipulating that "each candidate shall be eligible under the special qualifications (if any) prescribed by the Constitution and laws for the office for which he is a candidate", and whereas the Constitution and laws of Louisiana prescribed that "to be a member of a parish school board one shall, in addition to the qualifications otherwise prescribed by law, be able to read and write *Page 509 
and, at the time of election, assessed for not less than five hundred dollars ($500.00) of individual or community property in the parish", Act No. 100 of 1922, § 17, and whereas J.W. Tanner did not possess all these special qualifications to be a member of the Parish School Board in that at the time he qualified as a candidate before the committee he was assessed with less than $500 of individual or community property in East Baton Rouge Parish, it therefore refuses to certify him as the candidate of the party.
In his petition relator avers that the committee was without jurisdiction, power or authority to adopt such resolution, no written objection to his candidacy ever having been filed before it; that its mandatory duty under the primary election law was to certify him as the nominee of the party; that if it has any jurisdiction over the subject matter, its action was premature as, so far, he has only been nominated by the party as its candidate and there is no assurance that he will be elected in the general election; that no objections were urged to his candidacy by any one and if any one having the right to urge any wanted to do so, they should have been urged within the time limit as fixed by Section 28 of the primary law, Act No. 46 of 1940, which expired five days after the close of notifications of intention to become candidates by those so offering and the matter is now prescribed; that the property assessment qualification which it is claimed he lacked relates to the eligibility of any one to hold the office of school board member and not to his right to become a candidate and finally that the committee having received his notification of candidacy and having permitted him to run in both primary elections as such, is now estopped from questioning or contesting his right to the nomination. In the alternative relator attacked the constitutionality of Sec. 17 of Act No. 100 of 1922 which prescribes the property qualification for the office of member of a Parish School Board and likewise the constitutionality of the resolution of the Democratic State Central Committee of July 2, 1940, which imposes as additional qualifications on candidates those special qualifications (if any) prescribed by the Constitution and laws for the office for which he offers.
The relator made as parties defendant Joseph H. Duncan, the Democratic Executive Committee of the Parish of East Baton Rouge and James A. Gremillion, the Secretary of State. He prayed for an injunction against the Secretary of State to prohibit and restrain that official from printing the official ballot to be used in the general election with the name of Joseph H. Duncan as the candidate of the Democratic Party as certified by the resolution of the Parish Committee and in the alternative for a writ of mandamus to the said committee directing it to meet forthwith and declare him to be the nominee of the party for the office of member of the Parish School Board from the Eighth Ward of East Baton Rouge Parish, and to certify his name to the Secretary of State as such. He also prayed for judgment declaring the resolution of the Parish Committee which rejected his nomination to be null and void and of no force and effect and finally, in the alternative, that section 17 of Act No. 100 of 1922 and the resolution of the Democratic State Central Committee of July 2, 1940, in so far as it prescribed the special qualifications prescribed by the Constitution and laws of the State for candidates in primary elections, be declared unconstitutional.
The answer of the Democratic Executive Committee of the Parish of East Baton Rouge put at issue practically all of the allegations of the relator's petition. A plea of estoppel was urged against the relator based on his alleged admission to certain members of the Committee that he did not possess the required property qualification at the time he filed his notification of candidacy. Joseph H. Duncan filed an exception of no right or cause of action and under reservation, an answer which followed that of the Parish Committee. The Secretary of State, in his answer, disclaimed any interest in the suit other than to perform the ministerial and mandatory duties of his office which he alleges he is ready and willing to do as ordered.
Upon trial in the court below there was judgment in favor of the relator declaring the resolution which rejected his nomination to be null and void and of no effect. The judgment also made the alternative writ of mandamus which had been issued against the Parish Committee peremptory and the Committee was ordered to meet forthwith and declare the relator the nominee of the party and to certify his name as such to the Secretary of State. The plea of prescription filed against the Committee and Joseph H. Duncan was sustained *Page 510 
and that of estoppel urged by both these defendants against the relator was overruled.
On appeal to this court the judgment of the district court was affirmed. A decree to that effect was handed down on October 31, 1942, and in accordance with a memorandum filed in connection with the same, we now supplement the oral reasons that day assigned.
The action of the Parish Committee in having adopted the resolution of October 17, 1942, in which it refused to certify the relator as the nominee of its party even though he had been successful in the primary election, seems to be defended almost entirely on the basis of the resolution of the Democratic State Central Committee of July 2, 1940, which, it is contended, that committee had the perfect right and authority to adopt by virtue of Section 4 of Art. 8 of the State Constitution and section 27 of Act No. 46 of 1940, the latest State primary law. The section of the Constitution referred to seems merely to direct the Legislature to enact laws to secure fairness in party primary elections, conventions and other methods of nominating party candidates. All that it prescribes apparently, is that no person shall vote at any primary election or in any convention held for the purpose of nominating a candidate for public office, unless he is at the time a registered voter and unless he (the voter) "have such other and additional qualifications as may be prescribed by the party of which candidates for public office are to be nominated." The section of the primary law referred to prescribes that "the qualifications of voters and candidates in primary elections, held under this Act, shall be the same as are now required by the Constitution and election laws of this State for voters at general elections and the further qualifications prescribed by the State Central Committee of the respective political parties coming under the provisions of this Act."
Acting on the authority which no doubt it felt had thus been imparted to it, the Democratic State Central Committee, at its meeting of July 2, 1940, adopted a resolution in which it sought to fix certain qualifications for voters and candidates who may want to participate as such in the primary elections held by that party in this State. Among others the resolution ordains that "each candidate shall be eligible under the special qualifications (if any) prescribed by the Constitution and laws for the office for which he is a candidate." It then declares that no person shall become a candidate in any primary election unless he shall follow the formalities therein set out, among these being a declaration under oath that he possesses all the qualifications therein prescribed, and it then specifically enjoins any committee from in any wise certifying any person as a candidate for nomination by, "or as the nominee of the Democratic party, unless he has filed such application and such affidavit and possesses all such qualifications." As has already been indicated, section 17 of Act No. 100 of 1922 prescribes that to be a member of a Parish School Board, a person must, at the time of election, be assessed for not less than $500 of individual or community property in the parish in which he qualifies. This is the special qualification required by law for the office to which the relator aspired in the Parish of East Baton Rouge and, as he did not possess it, it is contended that the Parish Committee had no alternative but to follow the mandatory provision of the resolution of the Democratic State Central Committee and refuse to certify him as its nominee.
We believe that that part of the resolution of the State Central Committee which enjoins any committee from certifying any one as the nominee of the party "unless he has filed such application and such affidavit and possesses" all the qualifications prescribed therein, relates to the time when that person files his declaration of intention to become a candidate in the primary. That is the application referred to in the sentence and that is the one which must be accompanied by the affidavit also referred to, and it follows that the qualifications referred to in the same sentence must be those which had to be declared in that application. To hold otherwise would be to hold that a party committee could hold out a person as its candidate for nomination, permit him to run, as in this case, in two primaries, and then, after the primaries are over and he has been elected, take some retroactive action relating to his qualifications and declare him ineligible. It is our opinion that whilst the executive committee of any political party is vested with great authority in the matter of deciding who shall participate either as a voter or a candidate in their primaries, conventions or other methods of making their nominations, after the primaries, conventions *Page 511 
or other methods, whatever they may be, have been held and the results have been accomplished, the duty of such committees then becomes ministerial and they are left with nothing more to do except to carry out the expressed wishes of the voters or of those participating in the other ways of making nominations and certify the successful candidate to the proper authority. Any question regarding the qualifications of the candidate after that becomes one which relates to his eligibility to hold the office to which he aspires and one which requires the exercise of a judicial function to decide, a power with which such committees are not clothed. American Jurisprudence vol. 18, p. 271, Sec. 140; Corpus Juris Secundum, vol. 29, Elections, p. 214, §§ 146 and 147.
In the case of Migeot v. Barilleaux, La.App., 166 So. 157, we held that those provisions of the primary law relating to the filing of objections to the candidacy of any one who had declared his intention of becoming a candidate, for want of any of the prescribed qualifications, had reference to those qualifications affecting his right to enter the primary and not those touching his right to hold the office he sought and perform its functions. Consequently we held that the objection raised by his opponent to the candidacy of a person offering for the office of justice of the peace on the ground that he lacked the property qualification prescribed by the State Constitution, could not be urged before the committee, it being a qualification affecting his right to hold the office, and therefore the failure of the contestant to raise the objection under the provisions of the primary law before, did not preclude him from raising the same after the primary.
Even then, however, following an earlier decision of this court in the case of Duplessis v. Harrell, 9 La.App. 171, 119 So. 264, we held that the contestant had no cause of action as the qualification of the contestee which he was challenging was one affecting his eligibility to hold the office he was seeking and to which he had not yet been elected but merely nominated by his party as its candidate.
In the present case, the Democratic State Central Committee indirectly prescribed the property assessment qualification as one of its own affecting the right of a candidate for nomination by that party for election to the office of Parish School Board member. That additional qualification, like all the others imposed by it, therefore becomes one affecting the right of any one declaring his intention to become a candidate, to enter the primary, and consequently any objection raised on the ground that it is lacking, is one which would have to be presented before the committee before the primary election which has been called by it is held and under the procedure as outlined in section 28 of the primary law, Act No. 46 of 1940. According to the provisions of that section, the objection must be in writing, must contain in detail the reasons on which it is based and it "must be filed with the Chairman or Secretary of the committee, within five days after the last day upon which notification of intention to become a candidate may be filed." The district judge therefore correctly held that the prescriptive period of five days as provided for in that section of the statute applied and therefore the committee was without jurisdiction to disqualify the relator who admittedly had received a majority of the votes over his opponent in the primary.
On the plea of estoppel, we find, as stated by the trial judge, that the testimony regarding a certain conversation between the relator and two or three members of the committee and which may have had some bearing on his property assessment qualification, shows that it was purely informal and whatever its nature was, it took place before the committee had met. If anything that was said could possibly serve as the basis of a plea of estoppel, it strikes us that the estoppel could work both ways, as, if the matter was serious enough to arrest the attention of any one who took part in the conversation, then it may be said to have become incumbent on those members of the committee who heard it to make the proper disclosures before the committee to the end that the matter might have been investigated and the proper objections urged in time to disqualify the relator as a candidate. The plea was correctly overruled.
The grounds on which we have thus decided the case make it unnecessary for us to discuss and decide the various issues that were presented.
It is for the reasons herein stated that the judgment appealed from was affirmed by our decree handed down on the 31st day of October, 1942. *Page 512